UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HENRY AVOCADO CORP.,

    Plaintiff,

— against —

Z.J.D. BROTHER, LLC and
LONG ZHONG "MICHAEL" CHEN
    Defendants.

17-cv-4559 (ARR)

**Opinion and Order**

**Not for electronic or print publication**

ROSS, United States District Judge:

  This case pits Henry Avocado Corporation, a California-based avocado distributor, against Z.J.D. Brother, LLC, a New York purveyor of food to sushi restaurants, and ZJD's owner Long Zhong "Michael" Chen. Henry is suing ZJD and Chen under the Perishable Agricultural Commodities Act (PACA) for failing to pay for over $174,000 of avocados. ZJD and Chen have moved to dismiss the action for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). ZJD alleges in its defense that it let a New York-based wholesaler, Johnny Avocado Corporation, buy the avocados in question on its credit from Henry, that it already paid Johnny directly for the avocados that it purchased, and that if anyone is liable to Henry for nonpayment it is Johnny. Because this motion raises factual disputes that are not yet ripe to be decided at the stage of a motion to dismiss, the motion to dismiss is denied.

## BACKGROUND

  Taking the allegations of the well-pleaded complaint as true—as this Court must on a motion to dismiss—the facts of this dispute are simple. Henry is a distributor of fresh avocados. It is licensed by the United States Department of Agriculture to buy and sell wholesale quantities of fruits and vegetables and holds a valid PACA license. First Amended Complaint ("FAC") ¶ 6–7, ECF No. 17. In February 2017, Chen contacted Henry to express ZJD's interest in buying avocados directly from

Henry. *Id.* ¶ 8. Chen filled out Henry's Customer Information Sheet on ZJD's behalf, agreeing inter alia to pay Henry's attorney's fees if Henry sued to enforce the terms of any transactions, as well as 18% pre-judgment interest if it failed to timely pay for any goods that it ordered. *Id.* ¶¶ 11–12 & Ex. A.

Henry then sold three loads of avocados to ZJD from March to May of 2017. *Id.* ¶¶ 14, 20, 25. At ZJD's request, the goods were shipped directly to Johnny. *Id.* (While the complaint does not specify whence the avocados originated, Henry is a California corporation and the complaint states that the avocados were "sold and shipped . . . in interstate commerce." *Id.* ¶ 13.) ZJD accepted and paid for the first shipment of 38,000 pounds of avocados. *Id.* ¶¶ 15–19. ZJD subsequently accepted a second and third shipment of avocados without objection—comprising 40,000 and 39,000 pounds respectively—but did not pay Henry the $174,100 due for these shipments. *Id.* ¶¶ 20–29. At the bottom of the invoices that Henry sent ZJD for each of these three shipments was language stating that "[t]he perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." *Id.* ¶ 47 & Exs. B, D–E.

In a declaration offered in support of the defendants' motion to dismiss, however, Chen offers a markedly different account of the facts of this dispute, alleging that ZJD never entered into a contract to buy avocados from Henry. Decl. of Long Zhong Chen in Supp. of Defs.' Mot. to Dismiss ("Chen Decl."), ECF No. 19, at ¶ 2. Instead, Chen says that ZJD bought avocados only from a local New York wholesaler, Johnny, and then resold those avocados (along with fish) to various New York sushi restaurants. *Id.* ¶¶ 14–15, 17. According to Chen, ZJD stepped in to help Johnny when Johnny was having "cash flow problems" in early 2017, to ensure its supply of avocados. *Id.* ¶ 3–4. ZJD agreed to pay Henry directly on Johnny's behalf, with ZJD's payment to Henry then being credited against its

2

future orders from Johnny. *Id.* ¶ 4. To do so, ZJD submitted a credit application to Henry. *Id.* ZJD also agreed to advance Johnny $200,000 to finance Johnny's purchase of avocados from Henry. *Id.* ¶ 5. Although ZJD was not Johnny's only customer, the purpose of this loan "was to enable Johnny to pay Henry for the avocados which ZJD would buy from Johnny." *Id.* Chen denied "plac[ing] any order" directly with Henry for the avocados referenced in the complaint because "ZJD would not have committed to paying twice for the same avocados." *Id.* ¶ 9. In other words, Chen "believed that Johnny was using the funds advanced by ZJD to buy avocados from Henry, and then selling a portion of the avocados received from Henry to ZJD. If [Chen] had known that Johnny planned to order avocados from Henry on ZJD's credit, instead of paying for them out of ZJD's advance payments, ZJD would not have paid Johnny." *Id.* ¶ 11. ZJD and Chen offer over 500 pages of invoices, orders, and bank statements, attached as exhibits to Chen's declaration, in support of this version of events.[1]

## DISCUSSION

### I. The defendants' 12(b)(1) claim fails because it is really a 12(b)(6) claim.

The defendants first move to dismiss Henry's claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). They argue that this Court does not have federal question jurisdiction because the complaint fails to state a claim under PACA. *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem. of Law"), ECF No. 20, at 1–3. Specifically, they claim that PACA does not apply because (a) its requirement that conduct be in interstate commerce was not met and (b) ZJD was not a commission merchant, broker, or dealer, as those terms are defined by PACA. *Id.* at 2–3. This argument, however, confuses the issue of whether the plaintiff has a cause of

---

[1] On the other hand, in a sworn declaration submitted as an exhibit to the plaintiff's opposition to the motion to dismiss, Christopher Varvel, a salesman for Henry, insists that he spoke directly to Chen and Chen's son about ZJD's purchases of avocados. Decl. of Christopher Varvel in Supp. of Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Varvel Decl."), ECF No. 21-1, at ¶¶ 13, 16. But both Chen and Chen's son deny ever speaking to Varvel or placing any orders with Henry on ZJD's behalf. Decl. of Long Zhong Chen in Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Chen Decl. II)", ECF No. 23, at ¶¶ 2, 4-7, 9; Decl. of Michael Chen in Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Chen, Jr., Decl."), ECF No. 24, at ¶ 2.

action under PACA, which is properly addressed under Rule 12(b)(6), with the issue of whether this Court has the authority to hear this dispute.[2] A case can only be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional *power* to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (emphasis added).

The defendants' motion raises the question of what is sometimes referred to as "statutory standing": whether plaintiff has a cause of action under the applicable statute. But the Supreme Court recently clarified that this tern is "misleading, since 'the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014) (citation omitted). The question of whether a particular plaintiff has a cause of action simply "'does not belong' to the family of standing inquiries." *American Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark*, 134 S. Ct. at 1387). For this reason, the Second Circuit has resolved to "avoid this appellation [statutory standing] going forward." *Id.* Thus, properly understood, defendants' motion really raises the issue of whether Henry has failed "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), as the defendants argue in the alternative.

## II. The defendants' 12(b)(6) claim raises only factual disputes that cannot be resolved in their favor on a motion to dismiss.

In deciding a motion to dismiss under Rule 12(b)(6), this Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Nonetheless, the complaint's "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[2] Moreover, since Henry is a California corporation, FAC ¶ 1, both Chen and ZJD are New York citizens, *id.*, and the amount in controversy is greater than $75,000, this Court would have diversity jurisdiction even if it did not have federal question jurisdiction. *See* 28 U.S.C. § 1332; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

4

Only "a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009). Further, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief that is plausible on its face. *Id.*

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). A court can, however, consider materials outside the complaint on a 12(b)(6) motion in some limited circumstances. *Id.* For example, a district court can consider the full text of documents that are quoted in the complaint or "documents relied upon by [the] plaintiff in drafting the complaint and integral to the complaint." *Id.* But if other materials "outside the pleading[s] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Id.* (quoting Fed. R. Civ. P. 12(b)).

Here, the defendants sought to introduce an affidavit from Chen that provides a counter-narrative of facts, as well as over 500 pages of supporting documentation, with their motion to dismiss. *See* Chen Decl. The plaintiff submitted a declaration from one of its salesmen in response, *see* Varvel Decl.; in reply the defendants submitted another declaration from Chen, as well as a declaration from his son. *See* Chen Decl. II; Chen, Jr., Decl. None of this, however, is appropriate to consider on a motion to dismiss.[3] As counsel should know, a motion to dismiss is not a swearing contest. The only

---

[3] Although this Court is excluding this material rather than converting defendants' motion to dismiss into a motion for summary judgment, the defendants' motion would still be denied if it was treated as a motion for summary judgment. A district court can only grant summary judgement if "there [is] no genuine issue of material fact and . . . the moving party [is] entitled to judgment as a matter of law." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312

5

things this Court can consider on a motion to dismiss are the factual allegations of the well-pleaded complaint, and any documents attached to, quoted in, or integral to it.

### A. *The well-pleaded complaint makes out the elements of a PACA claim.*

PACA provides that a "commission merchant, dealer, or broker" who receives "perishable agricultural commodities" is required to hold those goods, or their proceeds, in trust for the benefit of any unpaid seller or supplier involved in the transaction. 7 U.S.C. § 499e(c)(2)). In order to demonstrate a claim to the proceeds from a PACA-created trust, a plaintiff must show five things:

> (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

*A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005) (citing 7 U.S.C § 499e).

Taking the factual allegations of the first amended complaint as true—and drawing all reasonable inferences in the plaintiff's favor—the plaintiff can make out all five of these elements. Indeed, there can be little dispute (1) that fresh avocados are "perishable agricultural commodities" given that they are fresh fruits or vegetables, *see* 7 U.S.C. § 499a(b)(4); (4) that Henry has not been paid in full; and (5) that Henry preserved its trust rights under PACA by putting the written notice required by statute at the bottom of its invoices, *see* 7 U.S.C. § 499e(c)(4). Defendants do argue in the conclusion—and only the conclusion—of their motion to dismiss that "(4) is not satisfied because the seller, Johnny, received full payment . . . and that (5) is not satisfied because the statements received by ZJD did not contain the written notice required to preserve trust rights." Defs.' Mem. of Law at 5-6 (citing the Chen Declaration). But Henry alleges that it has not been paid for the second or third shipments of avocados, FAC ¶¶ 20–29, and that it included the statutory language required to preserve

---

(2d Cir. 1997). But the additional affidavits and documents that the defendants submitted along with their motion to dismiss here are sufficient only to create disputes of material fact, not to warrant summary judgment.

its rights to the proceeds of a trust under PACA at the bottom of its invoices, FAC ¶ 47 & Exs. B, D–E. Therefore, taking the factual allegations of the complaint as true, these elements are satisfied.

The defendants also contest the second and third elements, arguing that ZFD is not a commission merchant, broker, or dealer, and that the conduct in question was not in interstate or foreign commerce because "ZJD bought [avocados] from a New York seller and sold to New York customers." Defs.' Mem. of Law at 2–3. These claims require somewhat more discussion.

Defendants' argument that ZFD is not a commission merchant, broker, or dealer fails because—according to the complaint—ZFD purchased over 2,000 pounds of avocados in a day and is therefore a dealer in perishable agricultural commodities. PACA defines the term "dealer" as "mean[ing] *any* person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary [of Agriculture], any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6) (emphasis added). In turn, the Secretary of Agriculture has promulgated a regulation stating that "[w]holesale or jobbing quantities, as used in paragraph (6) of the first section of [PACA], means aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x). And the complaint alleges that ZFD purchased and paid for 38,000 pounds of avocados in one shipment, then purchased but did not pay for shipments of 39,000 and 40,000 pounds of avocados. FAC ¶¶ 13-29. Taking the facts of the complaint as true, ZFD is therefore a "dealer."

The defendants' argument that the avocados in question were not purchased in "interstate commerce," as this term is defined by PACA, fails for similar reasons. PACA defines "interstate or foreign commerce" as "commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia." 7 U.S.C. § 499a(b)(3). Further, for the purposes of PACA, sales and shipments of perishable agricultural

7

commodities "shall be considered in interstate or foreign commerce if such commodity is part of that current of commerce usual in the trade . . . , whereby such commodity and/or the products of such commodity are sent from one State with the expectation that they will end their transit, after purchase, in another." 7 U.S.C. § 499a(b)(8). Here, the complaint states that Henry, a California corporation, sold over 100,000 pounds of avocados "in interstate commerce" to ZJD, a New York corporation, and that these avocados were shipped directly to Johnny in New York. FAC ¶¶ 1, 13–27. While the complaint does not specify the point of origin of the avocados, it can be reasonably inferred from the complaint that it was not New York—and ZJD does not dispute this fact.[4] Taking the allegations in the complaint as true, this is enough to establish that the transaction occurred in interstate commerce.

The defendants' argument to the contrary boils down to their claim that ZJD only engaged in intrastate commerce because they contracted to buy avocados from Johnny, a New York wholesaler, for resale to New York sushi restaurants. Defs.' Mem. of Law at 2–3. But even if it were true that ZJD only bought and resold avocados within the limits of New York, this would not take the avocados, which originated outside of New York, out of the "current of commerce usual in the trade." PACA's definition of interstate commerce requires only that a "shipment is of type of produce that commonly moves in interstate commerce and was shipped for resale to or by a produce dealer that does a substantial portion of its business in interstate commerce." *Produce Place v. U.S. Dep't of Agric.*, 91 F.3d 173, 175 (D.C. Cir. 1996). Indeed, "the current of interstate commerce should be thought of as akin to a great river that may be used for both interstate and intrastate shipping." *Id.* The avocados would continue to journey on this river even as they traveled *within* New York from Johnny, a produce dealer that does a substantial portion of its business in interstate commerce, to ZJD. *See id.* at 175-76 ("[A] shipment of strawberries can enter the current of interstate commerce even if the berries are reserved

---

[4] According to the affidavit that Henry submitted along with its response to the motion to dismiss, the avocados in question were in fact shipped to New York from Laredo, Texas. Varvel Decl. ¶ 5.

exclusively for sale and consumption within the state where they were grown."); *Maspeth Trading Inc. v. New A & N Food Mkt., Inc.*, No. 13-CV-6454 (RJD) (VVP), 2014 WL 3762694, at *5 (E.D.N.Y. June 10, 2014) ("[E]ven purely intrastate transactions may be subject to the PACA's provisions if they are part of the usual stream of commerce that includes other interstate transactions."), report and recommendation adopted, 2014 WL 3762965 (E.D.N.Y. July 30, 2014).

### B. *The well-pleaded complaint is not barred by the Statute of Frauds.*

Finally, the defendants contend that Henry's state law breach of contract claim fails to state a claim upon which relief can be granted because there was no written contract between Henry and ZJD and thus the Statute of Frauds makes any contract claim unenforceable. Defs.' Mem. of Law at 3–5. While a Statute of Frauds defense can be raised on a Rule 12(b)(6) motion, *see Velez v. Sanchez*, 693 F.3d 308, 331–32 (2d Cir. 2012), this argument also relies on factual disputes that cannot be resolved on a motion to dismiss. It can reasonably be inferred from the complaint that there was an oral contract, and the Uniform Commercial Code allows for oral contracts "[b]etween merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents . . . unless written notice of objection to its contents is given within ten days after it is received." N.Y. U.C.C. Law § 2-201(2).

While the complaint does not specifically state that there was an oral contract for the second and third shipments of avocados, it does allege that Chen contacted Henry to express interest in purchasing avocados from Henry, FAC ¶ 8, that Henry sold and shipped three shipments of avocados to ZJD, *id.* ¶ 13, that ZJD accepted the second and third shipments "without objection," *id.* ¶ 22, 27, and that Henry sent ZJD invoices for these shipments, *id.* ¶¶ 23, 28. And the copies of the invoices for these shipments attached to the complaint show that they were all filled out within two days of the orders in question. *See* FAC Exs. B, D–E. While the complaint does not specify that these invoices were received, ZJD and Henry are merchants, the invoices were sufficient to confirm the contract,

9

and it can reasonably be inferred that the invoices were received along with the shipments of avocados. Consequently, drawing all reasonable inferences in the plaintiff's favor, the defendants' Statute of Frauds defense fails at the stage of a motion to dismiss. *See Bazak Int'l Corp. v. Mast Indus., Inc.*, 535 N.E.2d 633, 634, 636 (N.Y. 1989) (holding that purchase orders "qualified as confirmatory writings within the 'merchant's exception' to the Statute of Frauds").

## CONCLUSION

As the defendants themselves admit, their motion "raises both factual and facial challenges to the first amended complaint, but primarily factual challenges." Defs.' Mem. of Law at 1. But resolving factual disputes is precisely what this Court cannot do on a motion to dismiss; instead, a district court must credit the facts in the plaintiff's well-pleaded complaint as true and draw all plausible inferences in the plaintiff's favor at this procedural stage. The defendants' motion to dismiss is therefore denied. This case must ripen further on the tree of discovery before it is ready to be resolved.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:    December 19, 2017
          Brooklyn, New York